# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF MISSOURI
## ST. JOSEPH DIVISION

|  |  |  |
|---|---|---|
| STEPHANIE MILLS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 5:15-cv-06003-NKL |
| | ) | |
| CAROLYN W. COLVIN, | ) | |
| Acting Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

## ORDER

Plaintiff Stephanie Mills appeals the Commissioner of Social Security's final decision denying her application for disability insurance benefits and supplemental security income. The decision is affirmed.

## I.    Background

Mills was born in 1967 and alleges she became disabled beginning August 2, 2011.

### A.  Medical history and opinion evidence

Mills saw Seth Raman, M.D., in June 2011 about anxiety problems that interfered with social activities.  She said Vistaril worsened her anxiety, so she had stopped taking it.  She also stated that she had taken Prozac but it gave her headaches so she stopped using it.  Dr. Raman diagnosed depression and started Mills on Klonopin.

Mills saw Dr. Raman again on July 1, 2011, and told him Klonopin was helping.  She said her anxiety comes and goes, but the increased morning dose of Klonopin was helping.  Dr. Raman renewed her prescription.  On July 29, 2011, Mills saw Dr.  Raman for follow up, and reported her medications were still working well for her.  Dr. Raman diagnosed depression and generalized anxiety disorder and instructed her to continue her medications.

On September 8, 2011, Mills told Dr. Raman that Klonopin was making her sleep a lot, and stated that she wanted to try Celexa, which Dr. Raman prescribed. On September 29, 2011, Mills called the doctor's office and reported that the Celexa was making her feel suicidal so she had to stop taking it. Two weeks later, Dr. Raman refilled Mills' Klonopin prescription.

On November 30, 2011, Mills saw Lori Kanke, LMSW, CRADC, at the Family Guidance Center, for an evaluation. Mills reported several symptoms, including agitation and restlessness, headaches, oversleeping, and memory problems. She also reported a history of suicidal ideation, but stated she did not have any plans, and that she overslept a lot and had problems with anxiety. Mills was diagnosed with generalized anxiety disorder, panic disorder, and major depressive disorder , and assigned a Global Assessment of Functioning (GAF) score of 31.

On December 2, 2011, Mills saw Dr. Raman, reporting that she did not have as much anxiety since she was no longer working. Dr. Raman renewed Mills' prescription for Klonopin and prescribed Prozac.

On January 3, 2012, Stanley Hutson, Ph.D., a State agency medical consultant, completed a Psychiatric Review Technique and Mental Residual Capacity Assessment based on a review of Mills' file. [Tr. 258-72.] Dr. Hutson opined that Mills' anxiety would cause moderate limitations maintaining attention and concentration for extended periods; working in coordination with or proximity to others without being distracted by them; interacting with the public; accepting instructions and responding to criticisms, getting along with coworkers or peers; and adapting to changes in a routine work setting. He opined that she would need a limited social setting, but could follow directions and complete tasks.

On January 11, 2012, Mills saw Mehnez Khan, M.D., for an initial psychiatric evaluation. Mills reported a history of anxiety for several years. She said she had been taking Prozac and

Klonopin, and continued to have severe anxiety. Mills reported doing well at home but would become very anxious at social gatherings. She stated that she started to worry on Fridays about having to go to church on Sundays, and that being around people made her hands go clammy and her heart race. She said it was hard for her not to worry. She stated that her mind raced all the time, and she believed that others had negative thoughts about her. Dr. Khan noted Mills' mood and affect were anxious. She diagnosed Mills with generalized anxiety disorder and social anxiety disorder, assigned a GAF score of 60, and increased Mills' Prozac prescription. The doctor recommended follow-up in six or seven weeks.

Dr. Khan renewed Mills' Klonopin prescription in February 2012 and next saw her in March 2012. Mills reported that overall, she had tolerated her medications. [Tr. 351.] She said she had occasional headaches, but no other side effects. Mills said she had felt more sad and depressed recently, and that she still worried a lot and woke up early on Sundays because she was nervous about church. Mills also said she had noticed some decrease in her attention span. Dr. Khan increased the dose of Prozac and instructed Mills to follow up in three weeks.

Dr. Khan renewed Mills' medications on April 3, 2012, and adjusted her Prozac prescription after Mills reported ongoing anxiety.

On April 13, 2012, Mills saw Lesley Johnson, LPC, for a therapy intake assessment. Mills reported she was experiencing depression, crying spells, helplessness, hopelessness, loneliness, sleep disturbance, anxiety, and panic attacks, and having trouble concentrating. She also stated that she believed she could read other people's minds. She reported thoughts of harming herself without plans or intentions. Ms. Johnson noted that Mills may often feel that people are out to get her. Ms. Johnson diagnosed generalized anxiety disorder and assigned a GAF score of 45. Ms. Johnson recommended a comprehensive examination and discussed with

3

Mills the goal of reducing her symptoms of anxiety.

Mills saw Dr. Khan on April 24, 2012, for medication management. Mills reported no further improvement in her anxiety, and said she felt worthless. Dr. Khan recommended she continue her medications, and that she receive cognitive behavioral therapy.

On April 19, 2012, Mills saw Glenn Schowengerdt, MS, LCSW, for a psychological evaluation. Mr. Schowengerdt noted that Mills' comprehension was mildly diminished. Mills reported a history of treatment for anxiety and depression, and that she had experienced suicidal ideation in the past, but had never attempted anything. She described symptoms such as feelings of sadness and wanting to sleep all the time; having no motivation to accomplish anything; and being chronically unhappy. She said the medication she was taking was helping with her anxiety, but made her depression worse. Mr. Schowengerdt noted that Mills' anxiety appeared to be something she had experienced difficulty with for quite some time. He diagnosed generalized anxiety disorder and dysthymic disorder, and assigned a GAF score of 53.

Dr. Khan renewed Mills' prescriptions in May 2012, and next saw Mills for follow up on June 21, 2012. Mills reported that she was feeling more depressed because her father was dying. She said she had not experienced improvement in her anxiety. She said that she tried to attend Bible school every Sunday, but would always wake up very early because she was anxious about going. Dr. Khan decreased Mills' dosage of Prozac and increased the Abilify.

On July 19, 2012, Mills saw Dr. Khan again, stating she felt more talkative and outgoing when taking Klonopin, but that it gave her headaches and made her tired. Mills said lorazepam was helping her sleep, but was not as effective for her anxiety. Dr. Khan recommended an increased dose of lorazepam.

At a follow up on August 9, 2012, Dr. Khan switched Mills to propranolol after Mills

reported being a little bit moody. Mills stated that her anxiety was improving and she was sleeping better.

That same day, Mills saw Camilla Hendren, LCSW, for a diagnostic assessment. Mills reported that her main issue in holding a job was her anxiety. She reported believing that people did not like her and are judging or scrutinizing her, and having symptoms such as depression, social anxiety, insecurities. Ms. Hendren diagnosed Mills with generalized anxiety disorder, social phobia, and major depression, and assigned a GAF score of 50.

Mills saw Ms. Hendren for therapy on August 30, 2012, where she reported that she was doing "fine" with her depression and anxiety because she was mostly spending time at home, and she stated that she isolated herself due to her fear of many things. [Tr. 338.] Ms. Hendren worked with Mills on coping strategies.

Mills saw Ms. Hendren again on September 18, 2012, where Mills reported trouble with focus and concentration. Mills also stated she was isolating herself more, and she experienced fear when she attended church. Ms. Hendren continued the diagnoses of major depression and generalized anxiety, and worked with Mills on coping strategies.

Dr. Khan renewed Mills' prescriptions on September 20, 2012, and saw Mills the following week. Mills reported only some improvement in symptoms, and stated that she believed Abilify was causing her to gain weight. Mills stated that she had not experienced any improvement in her anxiety while taking propranolol. Dr. Khan prescribed venlafaxine and recommended that she taper her propranolol and discontinue the Abilify. That same day, Mills saw Ms. Hendren, where Ms. Hendren noted that Mills tended to view everything in life as negative. Ms. Hendren encouraged Mills to have more confidence in herself and improve her rational thinking about her life.

5

Mills followed up with Ms. Hendren on October 17, 2012, where she reported that she was stressed about issues paying for her health insurance. Ms. Hendren worked on positive reinforcement, continued Mills' diagnoses of major depression, generalized anxiety, and social phobia, and assigned a GAF score of 55.

Mills received prescription renewals from Dr. Khan on October 22, 2012

Mills saw Ms. Hendren on October 31, 2012. Ms. Hendren continued the diagnoses of major depression, generalized anxiety, and social phobia, and assigned a GAF score of 57, noting Mills had made some improvements such as initiating conversations and making small talk. Mills saw Ms. Hendren again the following week, where they processed coping strategies and Ms. Hendren encouraged Mills toward treatment goals.

Mills saw Dr. Khan for medication management on November 8, 2012. Mills reported feeling better on venlafaxine, but stated that since she had stopped taking Abilify, she was having more negative thoughts about herself. Dr. Khan recommended she restart propranolol and increase the venlafaxine.

Mills saw Ms. Hendren on November 20, 2012, where she reported frustration with the holidays. Hendren recommended positive coping strategies, like walking her dog or riding her bike, and continued the diagnoses of major depression, generalized anxiety, and social phobia, with a GAF score of 57.

Dr. Khan refilled Mills' medications on November 30, 2012.

Mills saw Ms. Hendren on December 4, 2012. Mills said she believed people at church did not like her, and that people thought she was stupid. Ms. Hendren continued the diagnoses of social phobia, major depression, and generalized anxiety, and assigned a GAF score of 47.

Dr. Khan refilled Mills' medications on December 18 and December 31, 2012.

Mills saw Ms. Hendren for therapy on January 2, 2013. Ms. Hendren encouraged Mills to face her fears and have positive thoughts, and encouraged her to make small talk with others even if it made her nervous. She continued Mills' diagnoses of social phobia, major depression, and generalized anxiety, and assigned a GAF score of 47.

Dr. Khan also saw Mills for follow up on January 16, 2103, where Mills reported having a few panic attacks since her last appointment. She also reported feeling very lonely, and stated that her anxiety felt worse in the evenings. She reported no suicidal or homicidal ideations. Dr. Khan recommended that she increase her dose of Venlafaxine. That same day, Dr. Khan completed a Medical Source Statement–Mental, in which she opined that Mills had the following marked limitations: remembering locations and work-like procedures; understanding and remembering short and simple instructions; carrying out short and simple instructions; sustaining an ordinary routine without special supervision; working in coordination with or proximity to others without being distracted by them; making simple work-related decisions; completing a normal workday and work week without interruption from psychologically-based symptoms; asking simple questions or requesting simple assistance, accepting instructions and responding appropriately to criticism from supervisors; getting along with coworkers or peers without distracting them or exhibiting behavioral extremes; responding appropriately to changes in routine work setting; traveling to unfamiliar places or using public transportation; and setting realistic goals and working independently. Dr. Khan also opined that Mills would have extreme limitations understanding and remembering detailed instructions; carrying out detailed instructions; maintaining attention and concentration for extended periods; and interacting appropriately with the public. [Tr. 274-75.]

Dr. Khan renewed Mills' prescriptions on February 1, 2013.

7

Mills saw Ms. Hendren on February 6, 2013. Ms. Hendren worked with Mills on problem-solving techniques and coping strategies. She continued Mills' diagnoses of social phobia, major depression, and generalized anxiety, and assigned a GAF score of 47. Mills next saw Ms. Hendren on February 13, 2013. Hendren continued the same diagnoses and assigned the same GAF score.

Mills also saw Dr. Khan on February 13, 2013, for medication management. She reported doing well on her medications, but that she was having frontal headaches each day for several months. Dr. Khan recommended Mills continue her medications and do some volunteer work to keep busy.

On March 5, 2013, Dr. Khan renewed Mills' prescriptions.

On April 4, 2013, Mills saw Ms. Hendren, where she reported ongoing limitations secondary to her anxiety. Mills reported that she walked her dog on her property in an effort to get outside. Hendren continued the diagnoses and assigned a GAF score of 47.

Dr. Khan renewed Mills' prescriptions on April 4, 2013, and saw her on April 10, 2013 for medication management. Mills reported doing well on her medications and stated she was sleeping well, although she felt like she might sometimes be sleeping too much. Dr. Khan recommended she continue her medications.

Mills saw Ms. Hendren on May 2, 2013. She reported that she felt insecure when she went out in public, and believed that everyone was judging and talking about her. Ms. Hendren encouraged positives thoughts and continued the diagnoses of social phobia, major depression, and generalized anxiety, with a GAF score of 47.

Dr. Khan refilled Mills' medications on May 21 and June 3, 2013.

Mills saw Ms. Hendren on June 6, 2013, reporting having had a panic attack when trying

to attend a friend's party. Mills stated she became very anxious around people and started to sweat. Ms. Hendren encouraged the use of coping skills.

## B. Other evidence

In her Adult Function Report dated December 16, 2011, Mills indicated that she cared for her husband and two children; completed various household chores, such as doing the dishes and the laundry, cleaning the floors, dusting, and grocery shopping; prepared complete and balanced meals for the family daily; baked; took care of her dog; had no problem with her personal care routine; and was able to drive. [Tr. 195-205.] She stated she had trouble not sleeping enough when she was working, and sleeping too much when she was not working. [Tr. 196.] In response to a question about getting along with family, friends, neighbors or others, Mills wrote, "I feel like others don't like me. I am nervous and uncomfortable a lot of the time. It's very hard for me to be around people." [Tr. 200.] In response to a question about getting along with authority figures, such as police, bosses, landlords, or teachers, Mills wrote, "I do not get along well with people in authority. I am anxious and fearful and avoid these people." [Tr. 201.]

Mills testified at the administrative hearing of August 2013 that she has had anxiety her whole life, but it became worse in 2009 and she did not know why. [Tr. 36.] Presently, she helps in the nursery every Sunday at her church, in the room with children ages 18 months to three years old. She avoids talking to the children's parents, instead working on the day's lesson and involving herself with the children. She does not like to arrive 30 minutes early to church like her husband does, and would prefer to "walk [in]...right when church starts" because "[i]t's just very difficult to face people." [Tr. 42.] She was on a church activities committee sometime in 2012. She did not have difficulty coming up with ideas, but was not comfortable talking with the group members. [Tr. 40.] She and her husband spend a little time with another couple from

9

church.

In 2013, Mills reported to her therapist that she went to a craft show, musical production, tractor pull, and a powder puff football game. [Tr. 299.] Mills' therapy homework includes physical activities, such as walking her dog around her property, and exercising with her daughter or friends. She does the shopping for her family, but wears dark glasses to avoid having to have conversations.

Mills testified that she was currently taking Prozac, lorazepam, Effexor, and propranolol. When asked whether the medication helped, Mills answered, "Yes." [Tr. 43-44.] She explained, "I feel a little more balanced and my family says that my moods where I want to be alone don't last as long." [Tr. 44.]

Mills testified that her anxiety reduces her productivity at work because she is too "distracted by people." [Tr. 46.] She recounted a time when she was fired from a job at a car dealership. She said she was anxious and nervous doing the job, which involved answering phones and getting on an intercom to announce who was receiving the incoming call. She is anxious about being judged by people in authority. [Tr. 34, 45.]

Mills' husband filled out a Third-Party Adult Function Report, indicating that she cooked, cleaned, used the computer, watched television, cared for the dog, left the house daily, shopped in stores, attended church, talked to her mother on the phone, and had no problems taking care of her personal grooming needs. He noted that she sometimes stops taking her medications because she feels they make her gain weight and slow her thinking. [Tr. 210-17.]

The record of Mills' earnings history spans 1983-2011. She has always earned less than $10,000 per year, except two years, 2002 when she earned about $11,775, and 2003, when she

Case 5:15-cv-06003-NKL   Document 14   Filed 10/02/15   Page 10 of 18

earned about $13,700. She had no earnings or earnings of less than $500 many years. [Tr. 122-123.]

### C. The ALJ's decision

The ALJ found Mills has severe impairments of generalized anxiety disorder, social phobia, and mild major depressive disorder. The ALJ also concluded Mills did not meet Listing 12.04, Affective Disorders, or Listing 12.06, Anxiety-Related Disorders.

The ALJ found Mills has the residual functional capacity to perform:

> [A] full range of work at all exertional levels with superficial interaction with coworkers and supervisors, work around only small groups of people, and no interaction with the general public.

[Tr. 17.] The ALJ found Mill's subjective complaints were not entirely credible.

The ALJ concluded Mills could perform past relevant work as a housekeeper, and that such work does not require the performance of work-related activities precluded by Mills' residual functional capacity. The ALJ concluded] Mills is not disabled.

## II. Discussion

Mills argues the ALJ improperly formulated the RFC by discounting the opinion of treating psychiatrist Dr. Khan, and failing to include all limitations identified by consultant Dr. Hutson, notwithstanding the ALJ's decision to give Dr. Hutson's opinion substantial weight.

The Commissioner's findings are reversed "only if they are not supported by substantial evidence or result from an error of law." *Byers v. Astrue*, 687 F.3d 913, 915 (8th Cir. 2012). Substantial evidence is less than a preponderance of the evidence, but enough that a reasonable mind might accept it as adequate to support the Commissioner's conclusions. *See Juszczyk v. Astrue,* 542 F.3d 626, 631 (8th Cir. 2008). "If substantial evidence supports the Commissioner's conclusions, [the Court] does not reverse even if it would reach a different conclusion, or merely

because substantial evidence also supports the contrary outcome." *Byers*, 687 at 915.

### A. Credibility determination

Mills does not explicitly challenge the ALJ's credibility determination, but it affects the explicit challenges she does raise. Therefore, the Court will first review the credibility determination.

The primary question is not whether Mills actually experiences the subjective complaints alleged, but whether those symptoms are credible to the extent that they prevent her from performing substantial gainful activity. *See Hogan v. Apfel*, 239 F.3d 958, 961 (8th Cir. 2001).

When an ALJ determines a claimant is not credible and decides to reject the claimant's statements, the ALJ must provide specific reasons for the credibility finding. *See Delrosa v. Sullivan*, 922 F.2d 480, 485 (8th Cir. 1991); *Prince v. Bowen*, 894 F.2d 283, 296 (8th Cir. 1990). The ALJ must specifically consider evidence related to the claimant's work record; daily activities; "the duration, frequency and intensity of pain; the precipitating and aggravating factors; the dosage and side effects of medication; and functional restrictions." *Delrosa*, 922 F.2d at 485 (*citing Polaski v. Heckler*, 739 F.2d 1320 (8th Cir. 1984)); *see also* 20 C.F.R. 404.1529 and 416.929 (codifying the *Polaski* factors). *Compare Cox v. Barnhart*, 471 F.3d 902, 907 (8th Cir. 2006) ("Subjective complaints may be discounted if the evidence as a whole is inconsistent with the claimant's testimony.")

Credibility is "primarily for the ALJ to decide, not the courts." *Moore v. Astrue,* 572 F.3d 520, 524 (8th Cir. 2009) (internal quotation and citation omitted). "If an ALJ explicitly discredits the claimant's testimony and gives good reason for doing so, [the reviewing court] will normally defer to the ALJ's credibility determination." *Halverson v. Astrue,* 600 F.3d 922, 931 (8th Cir. 2010) (internal quotation and citation omitted).

Case 5:15-cv-06003-NKL   Document 14   Filed 10/02/15   Page 12 of 18

Here, the ALJ cited and considered the *Polaski* factors. The ALJ noted Mills did not have a consistent work history at any time prior to her alleged onset date, which the ALJ found suggested that Mills lacked the motivation to work. [Tr. 21.] Mills testified that her anxiety became worse in 2009, and her alleged onset date is in 2011. But her work history prior to 2009 is sporadic and reflects low earnings. An ALJ may properly discount a claimant's subjective complaints when, among other reasons, the record indicates lack of motivation to work as evidenced by sporadic work history or relatively low earnings. *See Bernard v. Colvin,* 774 F.3d 482, 489 (8th Cir. 2014) (ALJ appropriately considered claimant's sporadic work history in discrediting his subjective complaints); *Fredrickson v. Barnhart,* 359 F.3d 972, 976 (8th Cir. 2004) (ALJ properly considered claimant's sporadic work history and relatively low earnings record as evidence of potential lack of motivation to work).

The ALJ also noted Mills' activities, including her work as a Sunday school teacher; joining a church activities committee; going to a craft show, musical production, powder puff football game; walking her dog and exercising with her daughter; spending some time with another couple from church; performing household chores; shopping and driving; and ability to handle money and take care of her personal needs. While a claimant need not be bedridden to be disabled, the ALJ appropriately considered this evidence as detracting from Mills' allegations of disabling limitations. *See Medhaug v. Astrue*, 578 F.3d 805, 817 (8th Cir. 2009) (noting that certain acts, including shopping, vacuuming, cooking, making the bed, reading, and doing laundry were inconsistent with subjective allegations of disability); *Steed v. Astrue,* 524 F.3d 872, 876 (8th Cir. 2008) (ALJ did not err in finding claimant's daily living activities inconsistent with disability; claimant reported that she "could perform housework, take care of her child, cook, and drive").

13

The ALJ also expressly acknowledged Mills' diagnoses; testimony about how fear and anxiety interfered with her ability to work and socialize; treatment received, including therapy and medications; her reports of crying spells, financial worries, suicidal ideations, thoughts of getting a divorce, and feelings of loneliness, hopelessness, worthlessness, fatigue, and low self-esteem. The ALJ noted Mills wanted to isolate from others. But mental disturbance does not automatically render a person disabled. There must be severe functional loss establishing an inability to engage in substantial gainful activity. *Buckner v. Astrue,* 646 F.3d 549, 557 (8th Cir. 2011). Mills testified that her medications helped her. But she sometimes refuses to take her medication. *Guilliams v. Barnhart,* 393 F.3d 798, 802 (8th Cir. 2005) (failure to comply with prescribed treatment weighs against credibility). The record does not show she has sought or required inpatient treatment for depression or anxiety. Her psychiatrist and therapists work with her to encourage her to go out, develop coping strategies, engage in small talk, and do volunteer work or socialize, not to isolate herself. She in fact demonstrated some ability to socialize, as discussed above. She also testified that when participating in the activities committee, she did not have any problem coming up with ideas. The record does not demonstrate severe functional loss.

The ALJ articulated the inconsistencies upon which she relied in discrediting Mills' testimony about her subjective complaints, and substantial evidence in the record as a whole supports the ALJ's credibility finding.

**B. Weight given the opinion evidence**

An ALJ is charged with the responsibility of resolving conflicts among medical opinions, including conflicts among the various treating and examining physicians. *Finch v. Astrue*, 547 F.3d 933, 936 (8th Cir. 2008); *Estes v. Barnhart*, 275 F. 3d 722, 725 (8th Cir. 2002). An "ALJ is

not required to rely entirely on a particular physician's opinion or choose between the opinions [of] any of the claimant's physicians," *Martise v. Astrue*, 641 F.3d 909, 927 (8th Cir. 2011) (internal quotation and citation omitted), nor is an ALJ required to give the most weight to the opinion of a treating medical source.

The amount of weight given a treating medical source opinion depends upon support for the opinion found in the record; its consistency with the record; and whether it rests upon conclusory statements. An ALJ must give controlling weight to a treating medical source opinion if it is well-supported by medically acceptable clinical and laboratory diagnostic techniques, and is not inconsistent with the other substantial evidence. *Papesh v. Colvin,* 786 F.3d 1126, 1132 (8th Cir. 2015) (*quoting Wagner v. Astrue,* 499 F.3d 842, 848-49 (8th Cir. 2007)). The opinion may be given "limited weight if it provides conclusory statements only, or is inconsistent with the record." *Id.* (citations omitted). But the ALJ "may discount or even disregard the opinion . . . where other medical assessments are supported by better or more thorough medical evidence, or where a treating physician renders inconsistent opinions that undermine the credibility of such opinions." *Id.* (*quoting Miller v. Colvin*, 784 F. 3d 472, 477 (8th Cir. 2015)).

Here, the ALJ concluded Dr. Khan's opinion was entitled to little weight. In doing so, the ALJ observed that Dr. Khan's opined limitations rendered Mills incapable of functioning independently, which was a conclusion the ALJ found unsupported by the evidence. Dr. Khan's treatment records do not suggest the doctor considered Mills incapable of functioning independently. The doctor imposed no limitations on Mills, and in fact encouraged her to get out and do volunteer work. *See Halverson v. Astrue*, 600 F.3d 922, 930 (8th Cir. 2010) ("It is permissible for an ALJ to discount an opinion of a treating physician that is inconsistent with the

physician's clinical treatment notes.").  Further, Mills followed the hearing without difficulty and answered questions appropriately, something the ALJ found inconsistent with the marked and extreme limitations suggested by Dr. Khan.  Because Dr. Khan's opinion was inconsistent with the record as a whole, the ALJ's decision to accord the opinion little weight was within the allowable zone of choice.  *See, e.g., Andrews v. Colvin*, 2015 WL 4032122, at *4 (8th Cir. July 2, 2015) (little weight appropriately given to physician opinion that was inconsistent with other record evidence such as claimant's daily activities, administrative hearing demeanor, and non-compliance with medication).

The ALJ's decision to give the opinion of Dr. Hutson, the State agency psychological consultant, substantial weight was supported by substantial evidence.  Dr. Hutson opined Mills had the ability to understand instructions, follow instructions, and complete routine tasks, but would benefit from limited social demands in the work setting.  The decision is consistent with the evidence discussed above, including Mills' ability to shop and handle money, drive, come up with ideas for the church activity committee, take care of her children and the house, and accommodates Mills' symptoms, including difficulty being around people.

Mills argues the RFC finding did not expressly incorporate all of the limitations in Dr. Hutson's assessment, i.e., moderate limitations the doctor suggested Mills had in her ability to maintain attention and concentration for extended periods and to respond appropriately to changes in the work setting.  This is no basis for reversal.  First, the ALJ gave Dr. Hutson's opinion "substantial" weight—not identical weight.  While Dr. Hutson suggested Mills was moderately limited in two of seven discrete aspects of sustained concentration and persistence (but not significantly limited in the other five), and in one aspect out of four in the area of adaptation, that does not render the ALJ's RFC finding unsupported by substantial evidence.  A

16

claimant's RFC is to be based on *all* of the evidence, and "the ALJ is not required to rely entirely on a particular physician's opinion or choose between the opinions [of] any of the claimant's physicians." *Martise v. Astrue*, 641 F.3d 909, 927 (8th Cir. 2011) (quotation omitted).

In any event, Dr. Hutson also opined that, overall, Mills had only mild limitations in maintaining concentration, persistence or pace, which was consistent with the ALJ's conclusion that she was only mildly limited in that broad area of mental functioning, and supports the ALJ's ultimate conclusion that no further RFC limitations were required. *See* 20 C.F.R. §§ 404.1520a(c)(3) and 416.920a(c)(3); *Kamann v. Colvin,* 721 F.3d 945, 951 (8th Cir. 2013) (ALJ appropriately formulated claimant's RFC: "ALJ thoroughly reviewed years of medical evidence on record and issued a finding consistent with the views of Dr. Pressner, the reviewing agency psychologist."); and *Casey v. Astrue,* 503 F.3d 687, 694 (8th Cir. 2007) ("The ALJ did not err in considering the opinion of [the State agency medical consultant] along with the medical evidence as a whole.").

Furthermore, the ALJ did *not* find that Mills was symptom-free or that she did not suffer from any mental impairment. On the contrary, the ALJ determined that Mills suffered from the severe impairments of generalized anxiety disorder, social phobia, and mild major depressive disorder, and although the ALJ found Mills' allegations of disabling mental impairments not fully credible, the ALJ accounted for any limitations attributable to them by restricting Mills' RFC to account for the difficulties the ALJ did find credible and supported by the evidence. Simply put, Mills' different interpretation of the record in this case does not render the ALJ's decision unsupported by substantial evidence.

Mills also argues the ALJ should have given more explanation as to how Dr. Hutson's opinion was applied to the RFC.  An RFC is based not only on opinion evidence, but on all the

17

relevant evidence of record, including medical treatment records, physician observations, the claimant's description of her limitations, and other relevant evidence, *Lacroix v. Barnhart,* 465 F.3d 881, 887 (8th Cir. 2006), and is ultimately an administrative determination reserved to the Commissioner, *Perks v. Astrue,* 687 F.3d 1086, 1092 (8th Cir. 2012). Furthermore, reversal is necessary only if the failure prejudices the claimant. *Samons v. Astrue,* 497 F.3d 813, 821-22 (8th Cir. 2007) (citations omitted). An arguable deficiency in opinion writing technique is not grounds for reversal when that deficiency had no bearing on the outcome. *Robinson v. Sullivan,* 956 F.2d 836, 841 (8th Cir. 1992). The ALJ's analysis here provides "an adequate basis for meaningful judicial review" and is supported by substantial evidence. *See Cichocki v. Astrue*, 729 F.3d 172, 177 (2nd Cir. 2013) (holding that the ALJ's failure to explicitly engage in a function-by-function, RFC analysis does not require remand where the "ALJ's analysis . . . affords an adequate basis for meaningful judicial review, applies the proper legal standards, and is supported by substantial evidence such that additional analysis would be unnecessary or superfluous").

In view of the foregoing, the Court will not disturb the ALJ's decision with regard to the weight given the opinions of Dr. Khan and Dr. Hutson.

## III.    Conclusion

The Commissioner's decision is affirmed.

s/ Nanette K. Laughrey
NANETTE K. LAUGHREY
United States District Judge

Dated:  October 2, 2015
Jefferson City, Missouri